UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

John Doe,

Plaintiff,

v.

Saint John's University, Minnesota,

Defendant.

Case No. 21-cv-0361 (WMW/TNL)

**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS**

This matter is before the Court on Defendant Saint John's University's (the University) motion to dismiss. (Dkt. 9.) For the reasons addressed below, the Court grants the University's motion to dismiss.

**BACKGROUND**

The University is a private liberal-arts college in Collegeville, Minnesota. Doe is a full-time student at the University.

Doe and another student, Jane Roe, participated in the University's study-abroad program in France during the 2019 fall semester. Doe alleges that, while they were in France, Roe flirted with him. During the semester, Doe, Roe and Roe's roommate often participated in a bedtime ritual called "mega-bed," in which they placed their mattresses on the floor to create one large bed. During these "mega-bed" sessions, the complaint alleges, "nothing of a sexual nature happened."

On November 6, 2019, Doe and Roe were out drinking together with another student. According to Doe's allegations, he consumed an excessive amount of beer and

two shots of alcohol. Doe subsequently lost awareness of his actions. Doe's last recollection from that night involved him "trying to get a drink and the bartender [saying] no, telling him to go home." The next thing Doe remembers is waking up in Roe's residence hall room on a "mega-bed" with Roe and Roe's roommate.

On November 16, 2019, Doe received a notice informing him that Roe had reported that "during the late hours of November 6 and/or early morning hours of November 7, 2019," Doe engaged in unwelcome sexual contact with Roe in Roe's residence hall room.

Doe subsequently reported Roe for making a lewd comment about Doe's genitals as well as Roe's other unwelcome sexual advances. Thereafter, Roe reported additional allegations about Doe engaging in unwelcome sexual conduct with Roe. The University investigated the allegations, provided both Doe and Roe the opportunity to review and comment on the investigation reports and convened an Adjudication Panel (Panel). The Panel did not hold a hearing. On May 6, 2020, the Panel found Doe responsible for sexual assault in violation of the University's Sexual Misconduct Policy. The University subsequently imposed on Doe a disciplinary suspension, and prohibited Doe from being present on campus, until December 31, 2020, or until Roe graduated, whichever was later. Doe appealed the Panel's decision, and the University's appeal officers upheld the Panel's decision.

Doe commenced this lawsuit on February 8, 2021. In Count I of his complaint, Doe alleges that the University erroneously found that Doe committed sexual assault and that the University conducted a flawed proceeding in violation of Title IX, 20 U.S.C. § 1681.

In Count II of his complaint, Doe alleges that the University committed negligence because of its inadequate process and arbitrary suspension of Doe. The University moves to dismiss Doe's complaint for failure to state a claim on which relief can be granted.

**ANALYSIS**

A complaint must allege sufficient facts such that, when accepted as true, a facially plausible claim to relief is stated. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If a complaint fails to state a claim on which relief can be granted, dismissal is warranted. *See* Fed. R. Civ. P. 12(b)(6). When determining whether a complaint states a facially plausible claim, a district court accepts the factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). Factual allegations must be sufficient to "raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). Mere "labels and conclusions" are insufficient, as is a "formulaic recitation of the elements of a cause of action." *Id.* at 555. Legal conclusions couched as factual allegations may be disregarded by the district court. *See Iqbal*, 556 U.S. at 679.

On a motion to dismiss, a district court also may consider "materials that are necessarily embraced by the pleadings." *Smithrud v. City of St. Paul*, 746 F.3d 391, 395 (8th Cir. 2014). Materials are embraced by the pleadings when a complaint alleges the contents of the materials and no party questions their authenticity. *See Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017).

## I. Count I: Title IX Violation

The University seeks dismissal of Count I, arguing that Doe fails to plausibly allege facts that support a reasonable inference that the University disciplined him unfairly because of his sex. Doe contends that the complaint adequately alleges that the University's Sexual Misconduct Policy and Sexual Misconduct Complaint Procedures violate Title IX because they are "gender biased" in their application to Doe and other males.

Title IX provides, in relevant part, that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a).

To plausibly allege a violation of Title IX, a plaintiff must allege facts that support a plausible inference that the university discriminated against the plaintiff on the basis of sex. *See Rossley v. Drake Univ.*, 979 F.3d 1184, 1192 (8th Cir. 2020). Here, Doe must plausibly allege that the University disciplined him on the basis of sex—that is, because he is a male. *See id.* The Court addresses, in turn, Doe's allegations of discrimination.

### A. Evidentiary Weaknesses

Doe first alleges that "significant evidentiary weaknesses" underlie the University's findings, which suggests that the University engaged in sex discrimination. According to Doe, the University's lack of evidence that Roe objected to Doe's sexual contact supports Doe's discrimination claim. This argument is unavailing. The University's Sexual

Misconduct Policy provides, in relevant part: "[c]onsent must be informed and freely and actively given. . . . Simple silence, the lack of a negative response, or a failure to resist, in and of itself, is not consent. It is the responsibility of the person initiating sexual contact to obtain consent to any and all sexual contact that person initiates." Even if Roe did not object to the sexual contact, her failure to object does not meet the standard for consent under the terms of the Sexual Misconduct Policy. The University provided Doe with an opportunity to present evidence establishing that Roe consented to sexual contact. Doe failed to do so. Doe's allegations of evidentiary weakness, therefore, do not support a reasonable inference that the University discriminated against Doe on the basis of sex.

**B. Procedural Flaws**

Doe next contends that the University's Title IX process included "numerous procedural flaws" that led to an erroneous outcome. Specifically, Doe alleges that the University failed to provide a properly trained and unbiased investigator, refused to provide Doe with a hearing, prohibited Doe from conducting his own investigation or contacting witnesses, presumed Doe's guilt from the outset, and impermissibly placed the burden of proof on Doe. But Doe fails to address how these alleged procedural flaws caused the allegedly erroneous outcome. Nor do Doe's allegations demonstrate how the outcome would have been different absent these alleged procedural errors. *See Mulla v. Univ. of Minn.*, No. 20-cv-931 (SRN/LIB), 2021 WL 603774, at *8 (D. Minn. Feb. 16, 2021) (dismissing plaintiff's Title IX claim in part because his allegations failed to "cast doubt on the accuracy of the [university's] proceeding" and failed to "describe the additional

questioning that [the plaintiff] would have elicited, and how that would have changed the outcome of the proceeding"). Doe does not allege that the procedural errors violated the law or the University's policies.[1] Nor does Doe allege that these procedural flaws occurred because of Doe's sex. These alleged procedural flaws, therefore, do not support a reasonable inference that the University discriminated against Doe on the basis of sex.

### C. Bias of Institution

Doe alleges that the "erroneous outcome of the hearing and purported appeal can only be explained by gender bias against males in cases involving allegations of sexual assault." But Doe advances nothing more than conclusory allegations that the University's investigation was biased. Doe neither identifies statements made by members of the Panel nor relies on statements by University officials that would support an inference of discrimination. *See Mulla*, 2021 WL 603774 at *11 ("Also missing from [plaintiff's] allegations are any facts suggesting that the University actively endorsed policies that discussed Title IX investigations or sexual misconduct in gendered terms, or engaged in an improper pattern of decision making based on gender."). Doe has not alleged facts that

---

1 Doe alleges that the University's proceedings were inconsistent with the additional Title IX procedural regulations that were issued by the Office of Civil Rights of the Department of Education on May 6, 2020. But these new Department of Education regulations did not take effect until August 14, 2020, which was after Doe's suspension occurred, and the regulations do not apply retroactively. *See* 34 C.F.R. Part 106 (2020); *see also* Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Financial Assistance, 85 Fed. Reg. 30026-01 (May 19, 2020). Doe's arguments based on the new Title IX regulations are unavailing because those regulations do not apply to Doe's case.

support a reasonable inference that institutional bias caused the University to discriminate against Doe on the basis of sex.

### D. Statistics

Upon information and belief, Doe alleges, "in all, or in virtually all, cases of campus sexual misconduct at the University, the accused student is male and the accusing student is female," and that such a "significant gender-based statistical disparity demonstrates the existence of discrimination." According to Doe, the University impermissibly presumes that male students are " 'guilty until proven innocent' based on invidious gender stereotypes and has codified this by policy." But courts consistently reject this argument as supporting an inference of sex discrimination. *See, e.g.*, *Doe v. Univ. of St. Thomas*, 240 F. Supp. 3d 984, 991 (D. Minn. 2017) (holding that a court "cannot plausibly infer . . . a higher rate of sexual assaults committed by men against women, or filed by women against men, indicates discriminatory treatment of males accused of sexual assault" (internal citation omitted)); *see also Doe v. Cummins*, 662 Fed. App'x 437, 453–454 (6th Cir. 2016) ("It would be unreasonable, therefore, for us to infer that the gender disparity in [the university's] sexual-misconduct cases is the result of gender bias, as opposed to these other, more innocent causes."). Similarly, Doe's argument premised on the higher frequency of reported male-on-female sexual assault at the University does not support a reasonable inference that the University discriminated against Doe on the basis of sex.

**E. Internal and External Pressures**

Doe alleges that the discriminatory environment at the University is a result of pressure from federal agencies, the risk of a civil suit, and a desire to "change the so-called 'campus rape culture' at the expense of the individual rights of the accused male students."

A general reference to pressure from the United States government is insufficient to show gender bias under Title IX. *See Doe v. Blake Sch.*, 310 F. Supp. 3d 969, 982 (D. Minn. 2018). The complaint lacks any specific factual allegation demonstrating that the University was under such pressure or at risk of a civil suit. Instead, Doe advances only conclusory allegations of a gender-biased and "discriminatory environment at St. John's" without plausibly alleging any specific supporting facts. *See id.* (finding that the plaintiff had shown no chance of prevailing on a Title IX claim based on conclusory allegations including that the "erroneous outcome of the hearing can only be explained by gender bias against males in cases involving allegations of sexual assault" and that the "failure and refusal" to correct the alleged error "can only be explained by gender bias against males"). Doe's allegations of internal and external pressures fall short of plausibly pleading that Doe experienced discrimination on the basis of sex.

Even with all reasonable inferences drawn in favor of Doe, he fails to allege any facts that, either individually or in combination, state a claim of discrimination on the basis of sex in violation of Title IX. *See* 20 U.S.C. § 1681(a); *see also Doe*, 240 F. Supp. 3d at 990 (stating that Title IX should be construed to give school administrators flexibility to

determine a reasonable Title IX disciplinary punishment). Accordingly, the Court grants the University's motion to dismiss Doe's Title IX sex-discrimination claim.

**II. Count II: Negligence**

The University seeks dismissal of Doe's negligence claim founded on his academic suspension for two reasons. First, the University argues that Minnesota courts do not recognize claims of negligence founded on a university's role in student disciplinary proceedings. And second, the University argues that Doe fails to plausibly allege that the University's decision was arbitrary and capricious.

A Minnesota private university may be held liable for an *expulsion* decision that is arbitrary and capricious. *Abbariao v. Hamline Univ. Sch. of L.*, 258 N.W.2d 108, 112 (Minn. 1977); *see also Rollins v. Cardinal Stritch Univ.*, 626 N.W.2d 464, 470 (Minn. Ct. App. 2001) (applying the *Abbariao* "arbitrary and capricious" standard to university expulsions based on nonacademic misconduct). But the parties have not identified, and the Court's research has not found, a Minnesota Supreme Court decision that addresses a private university's liability for the *suspension* of a student for nonacademic misconduct. When the Minnesota Supreme Court has not addressed a particular issue arising under Minnesota law, a federal court must attempt to predict how the Minnesota Supreme Court would decide the question. *Doe v. Univ. of St. Thomas*, 972 F.3d 1014, 1017 (8th Cir. 2020). In doing so, a federal court may consider relevant state-court precedent, analogous decisions, considered dicta and any other reliable data. *Id.* In *University of St. Thomas*, for example, the Eighth Circuit predicted that the Minnesota Supreme Court would apply

the arbitrary-and-capricious standard to a common-law negligence claim involving a private university's suspension of a student for nonacademic misconduct. *Id.* at 1018. Doe must, therefore, plausibly allege that the University's decision to suspend him was "arbitrary and capricious." *Id.* (citing *Abbariao*, 258 N.W.2d at 112).

In *Tatro v. University of Minnesota*, the Minnesota Court of Appeals held that a university's decision may be arbitrary if the university violates its procedures. 800 N.W.2d 811, 816 (Minn. Ct. App. 2011), *aff'd on other grounds*, 816 N.W.2d 509 (Minn. 2012). Here, Doe has not plausibly alleged that the University violated its own procedures. He alleges, instead, that the University's procedures had "significant evidentiary weaknesses." Doe contends that the erroneous outcome is the product of gender bias against men accused of sexual assault, the failure to apply a presumption of innocence and the failure to "implement the [discipline] policy in a manner that would result in a fair process." These allegations pertain to Doe's frustration with the University's procedures. Doe does not allege that the University failed to perform an investigation in accordance with the University's policies. Drawing all reasonable inferences in Doe's favor, the Court concludes that Doe's allegations fail to suggest that the University's decision to suspend Doe was arbitrary and capricious.

Doe also alleges that he did not have an opportunity to be heard. "When the sanction is for misconduct, a student must be given notice and *some* opportunity to be heard." *Shuman v. Univ. of Minn. L. Sch.*, 451 N.W.2d 71, 74 (Minn. Ct. App. 1990) (emphasis added). Although Doe was not provided a hearing, he had multiple opportunities to be

heard. Doe was permitted to submit additional evidence to an investigator and to provide a list of witnesses to be interviewed. The proceedings allowed Doe to review the investigation report and respond to the investigation report, rebut Roe's response to the investigation report and appeal the Panel's decision to suspend Doe. The Panel prepared a 50-page, single-spaced report that explained the Panel's decision to suspend Doe and not Roe. And in its letter denying Doe's appeal, the Panel explained the reasons for its decision. When all reasonable inferences are considered in Doe's favor, the Court concludes that Doe fails to plausibly allege that the University acted in an arbitrary and capricious manner. *Abbariao*, 258 N.W.2d at 112.

The Court, therefore, grants the University's motion to dismiss Doe's negligence claim for failure to state a claim on which relief can be granted.

**ORDER**

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED**:

1. Defendant Saint John's University's motion to dismiss, (Dkt. 9), is **GRANTED**.

2. Plaintiff John Doe's complaint, (Dkt. 1), is **DISMISSED WITHOUT PREJUDICE**.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: October 27, 2021

s/Wilhelmina M. Wright
Wilhelmina M. Wright
United States District Judge